COHEN, J.
Petitioner, D.S., seeks a writ of certiora-ri to quash an order directing him to receive competency restoration services. We deny the petition because the order is moot.
Shortly after relocating from Haiti to Florida, Petitioner was charged with committing lewd and lascivious battery on a thirteen-year-old female. He was twenty-three years old at the time and spoke virtually no English. While our record is incomplete, it appears that, based upon uncontroverted reports from the defense’s mental health experts, the State agreed with the defense’s assertion that Petitioner was not competent to proceed. According to the experts’ reports, Petitioner’s incompetency stemmed from a combination of mental retardation and cultural issues, rather than any form of mental illness.[1]
On August 30, 2012, the trial court found Petitioner incompetent. The findings of fact recited in the court’s order reflect that the incompetency was based upon the factors outlined in the experts’ reports. Although none of the experts suggested that Petitioner suffered from any mental illness, the court found Petitioner incompetent to proceed due to mental illness as defined in section 916.106(13), Florida Statutes.[2] However, because the trial court found that Petitioner did not meet the criteria for involuntary commitment, he was placed on conditional release. One of the conditions of release was that Petitioner was required to undergo outpatient competency restoration training. That proved easier said than done.
Petitioner was initially referred to Lakeside Behavioral Healthcare, but this referral was rejected because Petitioner did not meet the program criteria “due to a lack of a major Axis I mental illness.” Petitioner was then referred to the Agency for Persons with Disabilities. That agency issued a report opining that it was unable to determine whether Petitioner met the statutory criteria for retardation, in part because Petitioner’s records had been destroyed in an earthquake in Haiti. The report concluded that if the court ordered competency restoration training, the training would take the full amount of time allowed by statute, and even then Petitioner would probably not pass a trial competency test. It is unclear what supervision or treatment, if any, Petitioner received thereafter.
In December 2013, Petitioner’s public defender filed a motion to terminate conditional release under Florida Rule of Criminal Procedure 3.212(d). That motion was *1259 granted and Petitioner’s conditional release was terminated.
Despite knowing about the problems with the previous competency restoration training referrals, the State did not indicate that it had found a possible solution until almost a year after the conditional release was terminated. During a hearing held in December 2014, Dr. Robert Janner testified that he could provide restoration services. Subsequently, the trial court ordered Petitioner to attend competency restoration services with Dr. Janner. However, the order stated that the court could not order payment for Dr. Janner’s services, and that if Dr. Janner would not provide the services free of charge, he should notify the prosecutor or court immediately. Unsurprisingly, Dr. Janner denied the judge’s request that he provide the competency restoration services for free.
Petitioner now seeks certiorari review, challenging the court’s authority to order additional competency restoration services. Florida Rule of Criminal Procedure 3.212(d) specifies that “[i]f the court decides that a defendant is not mentally competent to proceed but does not meet the criteria for commitment, the defendant may be released on appropriate conditions for a period not to exceed 1 year.” Fla. R.Crim. P. 3.212(d). The issue is whether, despite the language of the rule, the trial court has inherent authority to order competency restoration training after conditional release is terminated. The State argues that the trial court had continuing authority to direct Petitioner to attend competency restoration services under Florida Rule of Criminal Procedure 3.212(c).[3] But Rule 3.212(c) must be read in conjunction with Rule 3.212(d), which specifically relates to defendants who are not mentally competent to proceed but do not meet the criteria for commitment. Defendants in that situation may be released on appropriate release conditions for a period not to exceed one year. See Fla. R.Crim. P. 3.212(d).
Even if the trial court has continuing jurisdiction over Petitioner, there seems to be no specific authority for the court to order competency restoration training after conditional release has been terminated. At most, the court may order further evaluations to see if the defendant remains incompetent or meets the criteria for commitment. See Fla. R.Crim. P. 3.213(b). If the defendant remains incompetent, does not meet the criteria for commitment, and competency cannot likely be restored, then the criminal charge will eventually be dismissed. See id. By imposing the same condition of competency restoration training, not as a condition of conditional release but under the court’s “inherent authority,” the trial court circumvented the limitations of Rule 3.212(d). The trial court was likely frustrated that Petitioner was not given competency restoration *1260 training within the one-year period of conditional release; nevertheless, the law does not permit a trial court to fashion its own remedy in derogation of statutory and rule limitations.
The trial judge was presented with a difficult problem and received virtually no assistance from the parties, and little assistance from the medical field. But some of the difficulty presented by this case was self-inflicted. The problem began with the discrepancy between the trial court’s finding that incompetency was based upon mental retardation and cultural issues, rather than mental illness, and its legal ruling that Petitioner suffered from some unspecified mental illness under section 916.106(14), rather than an intellectual disability under section 916.106(13).[4] Additionally, had the parties and the court proceeded under section 916.302 instead of section 916.13, the course of this case might have been dramatically different. The court’s finding that Petitioner did not meet the criteria for involuntary commitment was made without any real understanding of the availability of treatment options.
That said, because there is no evidence that there are any funds available to provide a competency restoration program, the trial court stayed its order. The stay of an order ordinarily does not affect an appellate court’s certiorari jurisdiction; however, in this case, the order is effectively moot. If a subsequent order is entered lifting the stay, Petitioner may seek further certiorari review of that order.
PETITION DENIED.
TORPY, C.J., and LAWSON, J, concur.

. One of the experts, Dr. Olander, found: "[Petitioner] is mentally retarded and that his incompetence stems from an intellectual disability. ... The results of this evaluation revealed no signs of antisocial personality disorder or traits. In addition, [Petitioner] is not suffering from an underlying psychotic disorder and does not appear to represent an immediate threat to himself or others. Thus, he does not meet the criteria for placement in a psychiatric residential treatment center.” Another expert, Dr. Tressler, reported: "It is my opinion that [Petitioner] is not competent to proceed to hearing, plea, trial or sentencing. The incompetence is best attributed to deficits in cultural-specific knowledge and low cognitive functioning.... I do not consider hospitalization to be necessary for treatment of any mental illness.”

. No appeal was taken from that order. Notably, subsection (13) of section 916.106 defines "intellectual disability”; subsection (14) defines "mental illness.” Presumably, the trial court either cited the statute incorrectly or intended to find that Petitioner had an intellectual disability rather than a mental illness.

. That rule provides:
If the court finds the defendant is incompetent to proceed, or that the defendant is competent to proceed but that the defendant’s competence depends on the continuation of appropriate treatment for a mental illness or intellectual disability, the court shall consider issues relating to treatment necessary to restore or maintain the defendant’s competence to proceed.
(1) The court may order the defendant to undergo treatment if the court finds that the defendant is mentally ill or intellectually disabled and is in need of treatment and that treatment appropriate for the defendant’s condition is available. If the court finds that the defendant may be treated in the community on bail or other release conditions, the court may make acceptance of reasonable medical treatment a condition of continuing bail or other release conditions.
Fla. R.Crim. P. 3.212(c).

. The distinction between mental illness and intellectual disability goes beyond nomenclature; it has various legal consequences. See, e.g., Fla. R.Crim. P. 3.213(a)(l)-(2).